# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**ELLA MAY CROSS, et al**                                                                                                  **PLAINTIFFS**

**VS.**                                **CASE NO. 1:05-cv-00170-MPM-SAA**

**FOREST LABORATORIES**                                                                    **DEFENDANT**

## <u>MEMORANDUM OPINION</u>

### BACKGROUND

This cause comes before the Court on the defendant's motion in limine to exclude the testimony of plaintiffs' specific causation expert, George S. Glass, M.D. [85]. The Court has reviewed the briefs and exhibits and is prepared to rule.

This is a diversity suit under a variety of Mississippi tort claims, including wrongful death, product liability, and personal injury. The plaintiffs are Ella May Cross, individually and as Personal Representative of the Estate of Leon Cross, deceased; Ellis Donnell Cross; William Cross, Theodore Cross; and Sandra McFadden. The defendant is Forest Laboratories.

Leon Cross was an 81 year-old resident of Kosciusko, Mississippi. On May 20, 2004, Mr. Cross scheduled a colectomy to deal with abdominal pain he had been suffering from for several months. The surgery was scheduled for June 4, 2004. In the weeks preceding the surgery, Mr. Cross began experiencing pre-surgery anxiety. On May 22, 2004, he was prescribed a selective serotonin re-uptake inhibitor (SSRI), Lexapro, which was manufactured by Forest, to help manage the anxiety.

On the morning of May 24, Mr. Cross told his wife that he intended to kill himself. Mr. Cross exited his home and fatally shot himself in the stomach. A toxicology report revealed the

presence of an SSRI in Mr. Cross's blood sample. During the course of trial preparation, the plaintiffs retained Dr. George Glass to testify that in his opinion Lexapro was a significant contributing factor in Mr. Cross's suicide. Dr. Glass prepared a written report in which he laid out his methodology and bases for his conclusion. (Report of George Glass, M.D., ("Glass Rpt."), Ex. 58.) Forest has now moved to exclude Dr. Glass's testimony.

## STANDARD OF REVIEW

Expert testimony is admissible when it is "based on sufficient facts or data . . . is the product of reliable principles and methods and . . . [is] reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In interpreting Rule 702, the Supreme Court has held that the trial court is tasked with ensuring that scientific testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993). This entails a two part test. First, the court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid," and second, "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93, 113 S. Ct. at 2796. Factors to consider include whether the theory has been subjected to peer review and publication, the known or potential rate of error, the existence and maintenance of standards controlling the technique's operation, or whether the technique has achieved general acceptance in the relevant scientific or expert community. *Id.* at 593-94, 113 S. Ct. at 2797.

## DISCUSSION

### I. RELIABILITY OF DR. GLASS'S METHODOLOGY

Forest attacks the methodology of Dr. Glass's testimony by asserting that he failed to perform a proper differential diagnosis on the plaintiff. A differential diagnosis is an acceptable methodology when performed appropriately. See *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468

(5th Cir. 2012). It is defined as "a process of elimination by which medical practitioners determine the most likely cause of a set of signs or symptoms from a set of possible causes." *Pick v. Am. Med. Sys., Inc.*, 198 F.3d 241 (5th Cir. 1999). It requires the expert to "rule out other potential causes for the injury at issue." *Harris v. Spine*, No. 3:12CV874TSL-JMR, 2014 WL 4179915, at *6 (S.D. Miss. June 23, 2014).

Forest's criticism of Dr. Glass's diagnoses is that he failed to properly rule out some risk factors and that he failed to consider other factors at all. While it is true the expert must provide objective reasons for eliminating alternative causes, *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 289 (5th Cir. 1998), the expert need not consider every possible cause. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999). The testimony should only be excluded when "[the] expert utterly fails to consider alternative causes or fails to explain why the opinion remains sound in light of alternative causes suggested by the opposing party." *Id.* at 266, citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 764-65, 730 (3d Cir. 1994).

Dr. Glass's opinion, however, objectively provides reasons for eliminating the factors. Dr. Glass indicates that one factor, stomach pain, can be eliminated because Mr. Cross was taking steps to improve his condition by scheduling surgery. (Glass Rpt., pg. 19). Dr. Glass says another factor, Mr. Cross's anxiety over surgery (not his age as the defendant contends), is eliminated by a lack of evidence that Mr. Cross was experiencing anything beyond normal, anticipatory anxiety. (*Id.* at 10.)

As to other factors, Dr. Glass does not "fail to explain why his opinion remains sound." He notes a lack of evidence that Mr. Cross was psychotic or hallucinating. (*Id.*) He also states that there is no evidence as to why Mr. Cross would have had a sudden shift in his psychological state except for taking the Lexapro. (*Id.*)

Dr. Glass's report shows that he performed a reliable, scientific method to reach his conclusions by performing a differential diagnoses. Any criticism that Forest may have of his method goes to the weight of his testimony, not its admissibility. *See Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 351 (5th Cir. 2007).

## II. APPLICATION OF METHODOLOGY

Forest also contends that Dr. Glass's application of his methodology is lacking. Forest claims first that Dr. Glass's opinion on the specific cause falls outside the scope of the established general causes of SSRI-induced suicide. Second, Forest claims that Dr. Glass has not considered the underlying facts appropriately.

### A. Lack of General Causation

There is a two-step inquiry when determining the admissibility of causation evidence in toxic tort cases. *Knight,* 482 F.3d at 351. A court must first determine whether there is admissible general causation, in this case whether there are certain reactions to Lexapro that can cause suicide in the general population. *Id.*; *Johnson,* 685 F.3d at 468. Next a court must determine whether there is admissible specific causation, or whether Lexapro was the cause of Mr. Cross's suicide. *Knight*, 482 F.3d at 351.

The testimony of the plaintiffs' general causation expert, Dr. Healy, has previously been admitted. *In re Celexa & Lexapro Products Liab. Litig.*, 927 F. Supp. 2d 758, 768 (E.D. Mo. 2013). The remaining question is whether Dr. Glass's opinion presents one of the established general causes of SSRI-induced suicide in Mr. Cross's case. In his report, Dr. Healy lays out three methods by which Lexapro can induce suicide. They are (1) akathisia; (2) emotional blunting and disinhibition; and (3); psychotic decomposition. (MDL Report of Dr. David Healy, ("Healy Report"), pp. 33-36, Ex. 56.) Forest argues that Dr. Glass has failed to identify any of

these three mechanisms as the cause of Mr. Cross's suicide. Instead he has classified the mechanism as "egodystonia" or an action "not consistent with a person's behavior or personality" as the cause.

Forest either misinterprets or misrepresents Dr. Glass's opinion on the specific mechanism of Mr. Cross's suicide. As Forest claims, it is true that Dr. Glass ruled out akathisia and psychotic decompensation as the specific cause. (Deposition of George Glass, M.D., ("Glass Dep."), pp. 35, 82, Ex. 59.) Contrary to Forest's claims, however, Dr. Glass, in his deposition, repeatedly states that he believes Mr. Cross was experiencing emotional blunting and disinhibition. (*Id*. at 82-90). Rather Dr. Glass views Mr. Cross's egodystonia as evidence of Lexapro's effect on Mr. Cross, not as a causal mechanism. (*Id.* at 86-87.)

### B. Reliance on Speculation and Improper Facts

Forest also argues that Dr. Glass has relied on speculation in order to arrive at his conclusion. The criticism is that ultimately Dr. Glass has relied on two facts: (1) on May 22, 2004 Mr. Cross was prescribed Lexapro; and (2) on May 24, 2004 Mr. Cross committed suicide, and that these are insufficient to facts to show that Lexapro was the cause of Mr. Cross's suicide.

Forest claims that there is a lack of evidence as to when and how often Mr. Cross used Lexapro and whether there were any adverse effects. This is incorrect. Three pills were missing and Lexapro was present in Mr. Cross's blood. (*Id.* at 48.) Dr. Glass does not speculate that Lexapro is the cause of Mr. Cross's emotional blunting; rather he determines that Lexapro is the cause because it is the only new factor present at the onset of Mr. Cross's sudden mood shift. (*Id.* at 39-42). Forest would argue that Dr. Glass's only evidence for this connection is a temporal one – that the suicide was in close proximity in time to the ingestion of Lexapro – and that this is a fallacious connection. But as the Fifth Circuit has explained:

> A temporal connection standing alone is entitled to little weight in determining causation. However, a temporal connection is entitled to greater weight when there is an established scientific connection between exposure and illness or other circumstantial evidence supporting the causal link. *See Cavallo v. Star Enter.*, 892 F.Supp. 756 (E.D.Va.1995), *aff'd. in part*, 100 F.3d 1150 (4th Cir.1996), cert. denied, 522 U.S. 1044, 118 S.Ct. 684, 139 L.Ed.2d 631 (1998)

*Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999). There is ample evidence of an "established scientific connection" between exposure to SSRIs and suicide both in the general population[1] and specifically to elders,[2] especially within the first few weeks of treatment. It was, therefore, not improper for Dr. Glass to use the temporal proximity of Mr. Cross's treatment and suicide as a basis for his belief that Lexapro was a cause.

## CONCLUSION

ACCORDINGLY, the Court finds that Dr. Glass's testimony is based on a reliable methodology and only incorporates relevant facts, and as such Forest Laboratories' Motion in Limine to Exclude the Testimony of George S. Glass, M.D. [85-1] is DENIED.

This the 19th day of February, 2015.

                                                       **/s/ MICHAEL P. MILLS**
                                                      **UNITED STATES DISTRICT JUDGE**
                                                      **NORTHERN DISTRICT OF MISSISSIPPI**

---

[1] *See, e.g.*, Teicher et al., *Emergence of Intense Suicidal Preoccupation During Fluoxetine Treatment*, Am. J. Psychiatry 1990; 147: 207-210; Mann et al., *The Emergence of Suicidal Ideation and Behavior During Antidepressant Pharmacotherapy*, Arch. Gen. Psychiatry 1991; 48:1027-1033; Rothschild et al., *Reexposure to Fluoxetine After Serious Suicide Attempts by Three Patients: The Role of Akathisia*, J. Clin. Psychiatry 1991, 52:491-493.

[2] *See, eg.*, November 6, 2006, Memorandum from the Meeting of the FDA's Psychopharmacologic Drugs Advisory Committee (PDAC); Juurlink, et al., *The Risk of Suicide With Selective Serotonin Reuptake Inhibitors in the Elderly*, Am. J. Psychiatry, 163:5 May 2006.